IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK
_____

ALSHON C. WILLIAMS,

                              Plaintiff,

        v.                                        Civil Action No.
                                                  9:06-CV-0354 (GTS/DEP)
T. ALLEN, *et al.,*

                              Defendants.

_____

APPEARANCES:                          OF COUNSEL:

FOR PLAINTIFF:

ALSHON C. WILLIAMS, *pro se*
04-A-5364
Upstate Correctional Facility
P.O. Box 2001
Malone, New York 12953

FOR DEFENDANT:

HON. ANDREW M. CUOMO              C. HARRIS DAGUE, ESQ.
Attorney General of the          Assistant Attorney General
State of New York
The Capitol
Albany, NY 12224-0341

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

## REPORT AND RECOMMENDATION

    Plaintiff Alshon C. Williams, a New York State prison inmate who is

proceeding *pro se* and *in forma pauperis*, has commenced this civil rights action pursuant to 42 U.S.C. § 1983 against five employees of the New York State Department of Correctional Services ("DOCS"), including four stationed at the facility in which he was confined at the relevant times, alleging violation of his constitutional rights.  Plaintiff's complaint, although bereft of specifics, appears to allege that he was assaulted by two of the defendants while a third stood idly by, and that as a result of procedural due process violations it was Williams, rather than his assaulters, who was disciplined as a result of the incident.  As relief, plaintiff seeks recovery of damages in the amount of two million dollars as against each defendant, as well as various other relief including that his disciplinary record be expunged of all references to the incident, and the defendants be "fired and imprisoned" for their actions.

Currently pending before the court is a motion by the three defendants who remain in the action seeking summary judgment dismissing plaintiff's complaint based upon his failure to exhaust administrative remedies.  Having carefully reviewed the record in light of defendants' motion, without the benefit of a response from the plaintiff as to why dismissal is not warranted, I recommend that defendants' motion

2

for summary judgment be granted.

I.     BACKGROUND[1]

Plaintiff is a New York State prison inmate entrusted to the custody of the DOCS.  Second Amended Complaint (Dkt. No. 9) at ¶ 2.  Although somewhat unclear, it appears that at the times relevant to the claims set forth in his complaint, plaintiff was an inmate at the Clinton Correctional Facility ("Clinton"), located in Dannemora, New York.  *Id.* at ¶ 3.

Plaintiff contends that on October 19, 2005, he was assaulted by defendants Allen and Smith, two corrections officers assigned at Clinton, while defendant Tamer, a corrections sergeant at Clinton, observed the assault but failed to intervene on plaintiff's behalf.  *Id.* at ¶ 6.

Apparently as a result of the incident, a misbehavior report was issued to plaintiff; the nature of that report and the misbehavior alleged, however, is not disclosed in plaintiff's second amended complaint.  *Id.* at ¶ 6.  A disciplinary hearing, the level of which also is not known, was subsequently conducted on October 26, 2005 to address the charges set

---

[1]     In light of the procedural posture of the case the following recitation is derived from the record now before the court, with all inferences drawn, and ambiguities resolved, in favor of the plaintiff. *See Burtnieks v. City of New York,* 716 F.2d 982, 985-86 (2d Cir. 1983) (citations omitted).  It should be noted, however, that many if not most of plaintiff's substantive allegations are undoubtedly contested by the defendants.

forth in the misbehavior report.[2]  Second Amended Complaint (Dkt. No. 9)

at ¶ 6.  At the close of that hearing plaintiff was found guilty of violating

prison rules, and a disciplinary penalty, the specifics of which similarly are

not revealed in plaintiff's second amended complaint, was apparently

imposed.  *Id.*  That disciplinary determination was subsequently upheld on

appeal on December 22, 2005, to Donald Selsky, the DOCS Assistant

Commissioner and Director of Special Housing/Inmate Disciplinary

Programs.  *Id.*

II.   PROCEDURAL HISTORY

Plaintiff commenced this action on March 20, 2006.  Dkt. No. 1.

Following some initial procedural activity, including initial review of

plaintiff's original and first amended complaint, a second amended

complaint was filed with the court on August 16, 2006.  Dkt. No. 9.  In that

second amended complaint plaintiff named as defendants Donald Selksy;

T. Allen; C. Drown; C. Smith; and T. Tamer, and alleged claims of

---

[2]       The DOCS conducts three types of inmate disciplinary hearings.  Tier I
hearings address the least serious infractions, and can result in minor punishments
such as the loss of recreation privileges.  Tier II hearings involve more serious
infractions, and can result in penalties which include confinement for a period of time
in the Special Housing Unit (SHU).  Tier III hearings concern the most serious
violations, and could result in unlimited SHU confinement and the loss of "good time"
credits.  *See Hynes v. Squillace,* 143 F.3d 653, 655 (2d Cir.), *cert. denied*, 525 U.S.
907, 119 S. Ct. 246 (1998).

excessive force and denial of procedural due process.  Second Amended

Complaint (Dkt. No. 9) ¶ 2, 3, and 6.

On March 20, 2007, the five named defendants moved to dismiss

plaintiff's complaint for failure to state a legally cognizable claim.  Dkt. No.

23.  In a report issued on August 7, 2007, I recommended that plaintiff's

procedural due process claim and all claims against defendants Selsky

and Drown be dismissed, with leave to replead, but that defendants'

motion to dismiss plaintiff's excessive force claims be denied.  Dkt. No.

27.  That recommendation was adopted in its entirety on February 5, 2008

by District Judge Lawrence E. Kahn.[3]  Dkt. No. 29.

On October 22, 2008, following the completion of discovery,

defendants Allen, Smith and Tamer moved for summary judgment

dismissing plaintiff's remaining claims.  Dkt. No. 43.  The sole basis for

defendants' motion is their contention that plaintiff's claims are

procedurally barred based on his failure to exhaust available

administrative remedies before filing suit.  Despite having been served

with the requisite notification of the consequences of failing to respond

(Dkt. No. 43-2), plaintiff has failed to file any opposition to defendants'

---

[3]      Plaintiff did not file an additional amended complaint following the
issuance of Judge Kahn's order.

motion, which is now ripe for determination and has been referred to me

for the issuance of a report and recommendation, pursuant to 28 U.S.C. §

636(b)(1)(B) and Northern District of New York Local Rule 72.3(c).  *See

also* Fed. R. Civ. P. 72(b).

III.   DISCUSSION

     A.   Summary Judgement Standard

Summary judgment motions are governed by Rule 56 of the Federal

Rules of Civil Procedure.  Under that provision, summary judgment is

warranted when "the pleadings, the discovery and disclosure materials on

file, and any affidavits show that there is no genuine issue as to any

material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c); *see Celotex Corp. v. Catrett*, 477 U.S. 317,

322, 106 S. Ct. 2548, 2552 (1986); *Anderson v. Liberty Lobby, Inc.*, 477

U.S. 242, 247, 106 S. Ct. 2505, 2509-10 (1986); *Security Ins. Co. of

Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 82-83 (2d Cir.

2004).  A fact is "material", for purposes of this inquiry, if it "might affect

the outcome of the suit under the governing law."  *Anderson*, 477 U.S. at

248, 106 S. Ct. at 2510; *see also Jeffreys v. City of New York*, 426 F.3d

549, 553 (2d Cir. 2005) (citing *Anderson*).  A material fact is genuinely in

dispute "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S. Ct. at 2510.

A moving party seeking summary judgment bears an initial burden of demonstrating that there is no genuine dispute of material fact to be decided with respect to any essential element of the claim in issue; the failure to meet this burden warrants denial of the motion. *Anderson*, 477 U.S. at 250 n.4, 106 S. Ct. at 2511 n.4; *Security Ins.*, 391 F.3d at 83. In the event this initial burden is met, the opposing party must show, through affidavits or otherwise, that there is a material issue of fact for trial. Fed. R. Civ. P. 56(e); *Celotex*, 477 U.S. at 324, 106 S. Ct. at 2553; *Anderson*, 477 U.S. at 250, 106 S. Ct. at 2511. Though *pro se* plaintiffs are entitled to special latitude when defending against summary judgment motions, they must establish more than mere "metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S. Ct. 1348, 1356 (1986); *but see Vital v. Interfaith Med. Ctr.*, 168 F.3d 615, 620-21 (2d Cir. 1999) (noting obligation of court to consider whether *pro se* plaintiff understood nature of summary judgment process).

7

When deciding a summary judgment motion, a court must resolve any ambiguities, and draw all inferences from the facts, in a light most favorable to the nonmoving party. *Jeffreys*, 426 F.3d at 553; *Wright v. Coughlin*, 132 F.3d 133, 137-38 (2d Cir. 1998). Summary judgment is warranted only in the event of a finding that no reasonable trier of fact could rule in favor of the non-moving party. *See Building Trades Employers' Educ. Ass'n v. McGowan*, 311 F.3d 501, 507-08 (2d Cir. 2002) (citation omitted); *see also Anderson,* 477 U.S. at 250, 106 S. Ct. at 2511 (summary judgment is appropriate only when "there can be but one reasonable conclusion as to the verdict").

B.    Legal Significance of Plaintiff's Failure to Respond

Before turning to the merits of plaintiff's claims, a threshold issue to be addressed is the legal significance, if any, of his failure to oppose defendants' summary judgment motion, and specifically whether that failure automatically entitles defendants to dismissal of plaintiff's complaint, based upon their motion.

This court's rules provide that

> [w]here a properly filed motion is unopposed and the Court determines that the moving party has met its burden to demonstrate entitlement to the relief requested therein, the non-moving party's failure to file or serve any

> papers as required by this Rule shall be deemed as
> consent to the granting or denial of the motion, as the
> case may be, unless good cause is shown.

N.D.N.Y.L.R. 7.1(b)(3).  Undeniably, *pro se* plaintiffs are entitled to special

latitude when defending against summary judgment motions.  *See*

*Jemzura v. Public Serv. Comm'n,* 961 F. Supp. 406, 415 (N.D.N.Y. 1997)

(McAvoy, C.J.)).  Despite this measure of deference, the failure of an

unrepresented plaintiff to oppose a summary judgment motion does not

preclude the court from deciding the motion.  *Robinson v. Delgado*, No.

96-CV-169, 1998 WL 278264, at *2 (N.D.N.Y. May 22, 1998) (Pooler, J. &

Hurd, M.J.); *Cotto v. Senkowski*, No. 95-CV-1733, 1997 WL 665551, at *1

(N.D.N.Y. Oct. 23, 1997) (Pooler, J. & Hurd, M.J.); *Wilmer v. Torian*, 980

F. Supp. 106, 106-07 (N.D.N.Y. 1997) (Pooler, J. & Hurd, M.J.).  As can

be seen by the face of Local Rule 7.1(b)(3), however, before summary

judgment can be granted under such circumstances the court must review

the motion to determine whether it is facially meritorious.  *See Allen v.*

*Comprehensive Analytical Group, Inc*., 140 F. Supp. 2d 229, 231-32

(N.D.N.Y. 2000) (Scullin, C.J.); *Leach v. Dufrain*, 103 F. Supp. 2d 542,

545-46 (N.D.N.Y. 2000) (Kahn, J.).

　　　While a plaintiff's failure to properly oppose a defendant's motion

does not assure that the motion, however lacking in merit, will be granted, that failure is not without consequences.  By opting not to submit papers in opposition to their motion, plaintiff has left the facts set forth in defendants' Local Rule 7.1(a)(3) Statement unchallenged.  Courts in this district have routinely invoked Local Rule 7.1(a)(3) and its predecessor, Local Rule 7.1(f), deeming facts set forth in a statement of material facts not in dispute to have been admitted based upon an opposing party's failure to properly respond to that statement.[4]  *See, e.g.*, *Elgamil v. Syracuse Univ.*, No. 99-CV-611, 2000 WL 1264122, at *1 (N.D.N.Y. Aug. 22, 2000) (McCurn, S.J.) (listing cases); *see also Monahan v. New York City Dep't of Corrs.*, 214 F.3d 275, 292 (2d Cir. 2000) (discussing district courts' discretion to adopt local rules like 7.1(a)(3)).

I recommend that the court follow this well-established practice and, notwithstanding plaintiff's *pro se* status, accept defendants' assertion of facts as set forth in their Local Rule 7.1(a)(3) Statement as uncontroverted, in light of plaintiff's failure to respond to that statement, when reviewing defendants' motion for facial sufficiency.

---

[4]      According to Local Rule 7.1(a)(3), "any facts set forth in the Statement of Material Facts shall be deemed admitted unless specifically controverted by the opposing party."  *See* N.D.N.Y.L.R. 7.1(a)(3).

C.    Failure to Exhaust Remedies

In their motion, defendants assert that plaintiff's remaining Eighth Amendment claim is procedurally barred based upon his failure to exhaust available administrative remedies with regard to that cause of action.

With an eye toward "reduc[ing] the quantity and improv[ing] the quality of prisoner suits[,]"  *Porter v. Nussle*, 534 U.S. 516, 524, 122 S. Ct. 983, 988 (2002), Congress altered the inmate litigation landscape considerably through the enactment of the Prison Litigation Reform Act of 1996 ("PLRA"), Pub. L. No. 104-134, 110 Stat. 1321 (1996), imposing several restrictions on the ability of prisoners to maintain federal civil rights actions.  An integral feature of the PLRA is a revitalized exhaustion of remedies provision which requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a); *see Woodford v. Ngo,* 548 U.S. 81, 84, 126 S. Ct. 2378, 2382 (2006); *Hargrove v. Riley,* No. CV-04-4587, 2007 WL 389003, at *5-6 (E.D.N.Y. Jan. 31, 2007).  This limitation is intended to serve the dual purpose of affording "prison officials an opportunity to resolve

11

disputes concerning the exercise of their responsibilities before being

haled into courtl[,]" and to improve the quality of inmate suits filed through

the production of a "useful administrative record." *Jones v. Bock,* 549

U.S. 199, 127 S. Ct. 910, 914-15 (2007) (citations omitted); *see*

*Woodford,* 548 U.S. at 91-92, 126 S.Ct. at 2386; *see also Johnson v.*

*Testman,* 380 F.3d 691, 697 (2d Cir. 2004).  "[T]he PLRA's exhaustion

requirement applies to all inmate suits about prison life, whether they

involve general circumstances or particular episodes, and whether they

allege excessive force or some other wrong." *Porter*, 534 U.S. at 532,

122 S. Ct. at 992 (citation omitted).

In the event a defendant named in such an action establishes that

the inmate plaintiff failed properly to exhaust available remedies prior to

commencing the action, his or her complaint is subject to dismissal.[5]  *See*

*Pettus v. McCoy*, No. 04-CV-0471, 2006 WL 2639369, at *1 (N.D.N.Y.

Sept. 13, 2006) (McAvoy, J.); *see also Woodford*, 548 U.S. at 94-95, 126

S. Ct. at 2387-88 (holding that the PLRA requires "proper exhaustion" of

---

[5]        The failure of a prisoner to satisfy the PLRA's exhaustion requirement is
not jurisdictional, but instead gives rise to a defense which must affirmatively be raised
by a defendant in response to an inmate suit.  *Jones,* 127 S. Ct. at 918.  In their
answer, defendants have included an affirmative defense alleging plaintiff's failure to
satisfy his exhaustion obligation.  *See* Dkt. No. 30 at ¶ 14.

available remedies).  "Proper exhaustion" requires a plaintiff to

procedurally exhaust his or her claims by "compl[ying] with the system's

critical procedural rules."  *Woodford*, 548 U.S. at 95, 126 S. Ct. at 2388;

*see also Macias v. Zenk*, 495 F.3d 37, 43 (2d Cir. 2007) (citing *Woodford*).

While placing prison officials on notice of a grievance through less formal

channels may constitute claim exhaustion "in a substantive sense", an

inmate plaintiff nonetheless must meet the procedural requirement of

exhausting his or her available administrative remedies within the

appropriate grievance construct in order to satisfy the PLRA.  *Macias*, 495

F.3d at 43 (quoting *Johnson*, 380 F.3d at 697-98) (emphasis omitted).

New York prison inmates are subject to an Inmate Grievance

Program ("IGP") established by DOCS, and recognized as an "available"

remedy for purposes of the PLRA.  *See Mingues v. Nelson*, No. 96 CV

5396, 2004 WL 324898, at *4 (S.D.N.Y. Feb. 20, 2004) (citing *Mojias v.*

*Johnson*, 351 F.3d 606 (2d Cir. 2003) and *Snider v. Melindez*, 199 F.3d

108, 112-13 (2d Cir.1999)).  The IGP consists of a three-step review

process.  First, a written grievance is submitted to the Inmate Grievance

Review Committee ("IGRC") within twenty-one days of the incident.[6]  7

---

[6]     The IGP supervisor may waive the grievance timeliness requirement due to "mitigating circumstances."  7 N.Y.C.R.R. § 701.6(g)(1)(i)(a)-(b).

N.Y.C.R.R. § 701.5(a).  The IGRC, which is comprised of inmates and facility employees, then issues a determination regarding the grievance. *Id.* §§ 701.4(b), 701.5(b).  If an appeal is filed, the superintendent of the facility next reviews the IGRC's determination and issues a decision.  *Id.* § 701.5(c).  The third level of the process affords the inmate the right to appeal the superintendent's ruling to CORC, which makes the final administrative decision.  *Id.* § 701.5(d).  Ordinarily, absent the finding of a basis to excuse non-compliance with this prescribed process, only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to section 1983 in a federal court.  *Reyes v. Punzal*, 206 F. Supp. 2d 431, 432 (W.D.N.Y. 2002) (citing, *inter alia*, *Sulton v. Greiner*, No. 00 Civ. 0727, 2000 WL 1809284, at *3 (S.D.N.Y. Dec. 11, 2000)).

In his second amended complaint, plaintiff admits his awareness of a prisoner grievance procedure at Clinton, and that he nonetheless did not submit a grievance relating to the incident now at issue.[7]  Second Amended Complaint (Dkt. No. 9) at ¶ 4. This is confirmed by Tara

---

[7]     It is quite apparent that plaintiff is no stranger to the New York IGP. Records at the Gouverneur Correctional Facility, where plaintiff was incarcerated for thirteen and one-half months during the calendar years 2005 and 2006, reveal that during that period he filed in excess of one hundred separate grievances.  *See* Besaw Aff. (Dkt. No. 43-3) ¶¶ 5, 11-13 and Exh. B.

Brousseau, the Inmate Grievance Supervisor at Clinton, who in an affidavit in support of defendants' motion notes that plaintiff filed three grievances while incarcerated at Clinton, but that none of them related to the incident now complained of.[8]  Brousseau Aff. (Dkt. No. 43-6) ¶ 13. Kathleen M. Besaw, the Inmate Grievance Supervisor at the Gouverneur Correctional Facility, where plaintiff was transferred after leaving Clinton in October of 2005, confirmed that plaintiff was an inmate in Gouverneur during 2005 and 2006, and while there had filed many grievances, none of which related to the alleged incident of which he now complains.  Besaw Aff. (Dkt. No. 43-3)  ¶¶ 13, 15.

To be sure, there are circumstances under which an inmate's failure to file a proper grievance before commencing suit may be overlooked and not relied upon as a basis for dismissal of his or her federal claims.  *See Masie v. Zenk,* 495 F.3d 37, 44-45 (2d Cir. 2007); *Hemphill v. New York*, 380 F.3d 680, 688-89 (2d Cir. 2004).  In this case, however, the record fails to disclose a proper basis for excusing important PLRA requirement of exhaustion.

---

[8]      Interestingly, in her affidavit, Brousseau further states that plaintiff was transferred out of Clinton on October 5, 2005, two weeks prior to the incident he alleges in his complaint.  Brousseau Aff. (Dkt. No. 43-6) ¶ 16.

In light of plaintiff's undisputed failure to exhaust administrative remedies and the fact that plaintiff has not offered any evidence indicating that the grievance procedure was not available to him, or otherwise form a proper basis for excusing the exhaustion requirement, I recommend that plaintiff's remaining Eighth Amendment claim be dismissed on this procedural basis and the second amended complaint against defendants Tamer, Allen and Smith be dismissed.  And, since plaintiff's time to file a grievance or to request permission to file an untimely grievance regarding the incident in October of 2005 has long since passed, *see* 7 N.Y.C.R.R. § 701.6(g)(1)(i)(a), I recommend that the dismissal be with prejudice.  *Berry v. Kerik*, 366 F.3d 85, 88 (2d Cir. 2004); *see also Toomer v. County of Nassau*, No. 07-CV-1495 (JFB) (ETB), 2009 WL 1269946, at *9 (E.D.N.Y. May 5, 2009).

IV.    SUMMARY AND RECOMMENDATION

Plaintiff asserts that as a result of the use of excessive force against him by defendants Allen and Smith, and defendant Tamer's failure to intervene, defendants violated his right to be free from cruel and unusual punishment afforded by the Eighth Amendment.  Plaintiff's failure to file a grievance regarding the matter before commencing this action, however,

precludes the court from considering the merits of his Eighth Amendment claim.  Accordingly, it is hereby respectfully

RECOMMENDED that defendants' motion for summary judgment (Dkt. No. 43) be GRANTED, and that the remaining claims in plaintiff's second amended complaint be DISMISSED, with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have ten days within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  FAILURE TO OBJECT TO THIS REPORT WITHIN TEN DAYS WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roldan v. Racette*, 984 F.2d 85 (2d Cir. 1993).

It is further ORDERED that the clerk of the court serve a copy of this report and recommendation upon the parties in accordance with this court's local rules.

Dated:      June 26, 2009
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge